U.S. COURT OF APPEALS
RECEIVED
08/14/2026
FIFTH CIRCUIT

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 26-20161**

**DEBORAH SWAN,**
Plaintiff-Appellant,

v.

DEPUTY WATER SHIELDS, Individually and in his Official Capacity;
MONTGOMERY COUNTY CONSTABLE'S OFFICE, PRECINCT 3;
MONTGOMERY COUNTY, TEXAS; CAPTAIN MICHAEL ATKINS,
Defendants-Appellees.

# BRIEF OF PLAINTIFF-APPELLANT DEBORAH SWAN

On Appeal from the United States District Court

for the Southern District of Texas, Houston Division

Civil Action No. 4:25-cv-02799

Hon. Keith P. Ellison, United States District Judge

Deborah Swan, Pro Se

1318 Chesterpoint Drive

Spring, Texas 77386

(346) 372-4344

swansinvestigations@gmail.com

## CERTIFICATE OF INTERESTED PERSONS

No. 26-20161, Deborah Swan v. Deputy Water Shields, et al.

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned unrepresented Appellant certifies that the following persons and entities are known to have an interest in the outcome of this case so that the judges of this Court may evaluate possible disqualification or recusal:

1. Deborah Swan - Plaintiff-Appellant, pro se.
2. Deputy Water Shields - Defendant-Appellee, sued individually and in his official capacity.
3. Montgomery County Constable's Office, Precinct 3 - Defendant-Appellee.
4. Montgomery County, Texas - Defendant-Appellee.
5. Captain Michael Atkins - listed as a Defendant-Appellee in the Fifth Circuit caption; the district court stated that the operative Third Amended Complaint did not name him as a defendant. ROA.1149 n.10.
6. Daniel Plake, Montgomery County Attorney's Office - counsel for Appellees Shields, Montgomery County, and the Constable's Office.

To Appellant's knowledge, no other private person, association, firm, partnership, corporation, insurer, affiliate, parent corporation, or other legal entity has a financial interest in the outcome of this litigation.

/s/ Deborah Swan

Deborah Swan, Appellant Pro Se

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. This appeal concerns the Rule 12(b)(6) characterization of allegations involving operational law-enforcement records, the interaction between First Amendment retaliation, stigma-plus due process, qualified immunity, and municipal liability, and the effect of dismissal with prejudice where the district court's final opinion identified the pleading deficiencies for the first time. Oral argument would assist the Court in distinguishing the pleaded course of conduct from the narrower "false police report" theory used in the dismissal analysis and in identifying the appropriate scope of remand.

## TABLE OF CONTENTS


| | |
|---|---|
| CERTIFICATE OF INTERESTED PERSONS | i |
| STATEMENT REGARDING ORAL ARGUMENT | ii |
| TABLE OF AUTHORITIES | iii |
| STATEMENT OF JURISDICTION | 1 |
| ISSUES PRESENTED FOR REVIEW | 1 |
| STATEMENT OF THE CASE | 3 |
| STATEMENT OF FACTS | 4 |
| SUMMARY OF THE ARGUMENT | 7 |
| STANDARDS OF REVIEW | 9 |
| ARGUMENT I | 10 |
| ARGUMENT II | 12 |

| | |
|---|---|
| ARGUMENT III | 14 |
| ARGUMENT IV | 17 |
| ARGUMENT V | 19 |
| ARGUMENT VI | 21 |
| ARGUMENT VII | 23 |
| ARGUMENT VIII | 25 |
| ARGUMENT IX | 27 |
| CONCLUSION | 29 |
| CERTIFICATE OF COMPLIANCE | 31 |
| CERTIFICATE OF SERVICE | 31 |


## TABLE OF AUTHORITIES

**Cases**

| | |
|---|---|
| Alexander v. Walker, 435 S.W.3d 789 (Tex. 2014) | 27, 28 |
| Ashcroft v. Iqbal, 556 U.S. 662 (2009) | 10, 12 |
| Blackburn v. City of Marshall, 42 F.3d 925 (5th Cir. 1995) | 17 |
| City of Canton v. Harris, 489 U.S. 378 (1989) | 21 |
| Collins v. Morgan Stanley Dean Witter, 224 F.3d 496 (5th Cir. 2000) | 12 |
| Club Retro, L.L.C. v. Hilton, 568 F.3d 181 (5th Cir. 2009) | 9 |
| Colson v. Grohman, 174 F.3d 498 (5th Cir. 1999) | 15, 16 |
| Escalante v. Lidge, 34 F.4th 486 (5th Cir. 2022) | 10 |
| Foman v. Davis, 371 U.S. 178 (1962) | 23, 24 |
| Franka v. Velasquez, 332 S.W.3d 367 (Tex. 2011) | 27 |
| Frias v. Hernandez, 142 F.4th 803 (5th Cir. 2025) | 10, 27, 28 |
| Goodman v. Harris County, 571 F.3d 388 (5th Cir. 2009) | 29 |
| Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305 (5th Cir. 2002) | 25 |

| | |
|---|---|
| Groden v. City of Dallas, 826 F.3d 280 (5th Cir. 2016) | 22 |
| Hope v. Pelzer, 536 U.S. 730 (2002) | 19 |
| In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007) | 9, 10 |
| Johnson v. Bowe, 856 F. App'x 487 (5th Cir. 2021) | 15, 16 |
| Johnson v. City of Shelby, 574 U.S. 10 (2014) | 10 |
| Keenan v. Tejeda, 290 F.3d 252 (5th Cir. 2002) | 7, 14, 15, 16, 20 |
| Monell v. Department of Social Services, 436 U.S. 658 (1978) | 2, 4, 6, 8, 9, 14, 21, 22, 23, 30 |
| Owen v. City of Independence, 445 U.S. 622 (1980) | 21 |
| Paul v. Davis, 424 U.S. 693 (1976) | 7, 17 |
| Pearson v. Callahan, 555 U.S. 223 (2009) | 19 |
| Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) | 21 |
| San Jacinto Savings & Loan v. Kacal, 928 F.2d 697 (5th Cir. 1991) | 17, 18 |
| Skinner v. Switzer, 562 U.S. 521 (2011) | 10 |
| Stripling v. Jordan Production Co., 234 F.3d 863 (5th Cir. 2000) | 9, 23 |
| Taylor v. Riojas, 592 U.S. 7 (2020) | 19 |
| Vitek v. Jones, 445 U.S. 480 (1980) | 18 |
| Wooten v. McDonald Transit Associates, Inc., 788 F.3d 490 (5th Cir. 2015) | 25 |

**Statutes**

| | |
|---|---|
| 28 U.S.C. § 1291 | 1 |
| 28 U.S.C. § 1331 | 1 |
| 28 U.S.C. § 1343 | 1 |
| 28 U.S.C. § 1367 | 1 |
| 42 U.S.C. § 1983 | 1, 21 |
| Tex. Civ. Prac. & Rem. Code § 101.001(5) | 27 |
| Tex. Civ. Prac. & Rem. Code § 101.057 | 27, 29 |
| Tex. Civ. Prac. & Rem. Code § | 10, 27 |

101.106(f)

**Rules**


| | |
|---|---|
| Fed. R. Civ. P. 12(b)(6) | 1, 9, 10, 12, 18, 23 |
| Fed. R. Civ. P. 15(a)(2) | 23, 30 |
| Fed. R. Civ. P. 55 | 9, 25, 26 |
| Fed. R. App. P. 4(a)(1)(A) | 1 |

## STATEMENT OF JURISDICTION

The district court had federal-question jurisdiction over Swan's claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), and supplemental jurisdiction over related Texas-law claims pursuant to 28 U.S.C. § 1367.

The district court entered its Memorandum and Order and Final Judgment on March 24, 2026. ROA.1134-50. The judgment disposed of the claims against Deputy Shields and Montgomery County with prejudice and the claims against the Montgomery County Constable's Office without prejudice, and denied the remaining motions as moot. ROA.1148-50. Swan filed her Notice of Appeal on April 6, 2026. ROA.1151-52. The notice was therefore timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

This Court has jurisdiction under 28 U.S.C. § 1291 because Swan appeals from the final judgment disposing of the district-court action.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred under Rule 12(b)(6) by reducing the operative pleading to a claim about one inaccurate police report rather than evaluating the alleged course of retaliatory mental-health coding, additional CAD/dispatch entries, governmental dissemination, continued maintenance, and lack of a corrective process.

2. Whether the Third Amended Complaint plausibly alleged First Amendment retaliation where Swan alleged protected reporting, petitioning, and political expression followed by materially adverse use of law-enforcement authority and operational records.

3. Whether the Fourteenth Amendment stigma-plus claim was properly dismissed with prejudice where Swan alleged false mental-health classifications published in governmental systems together with direct governmental consequences and no process to contest the designation.

4. Whether the qualified-immunity ruling should be vacated where the district court's first prong depended on its dismissal of the underlying constitutional claims and the order did not conduct a claim-specific clearly-established analysis.

5. Whether the derivative dismissal of the Monell claim should be vacated if an underlying constitutional claim is reinstated, and whether Swan plausibly alleged a no-correction practice, training deficiencies, supervisory notice, and continuing maintenance of the disputed entries.

6. Whether dismissal with prejudice was an abuse of discretion where the court had granted the Third Amended Complaint, barred further amendment only until it ruled on the motion to dismiss, and then identified the operative pleading deficiencies for the first time in the final dismissal order without allowing a targeted amendment.

7. Whether the court's service/default rulings should be clarified where Montgomery County appeared, moved to dismiss, and obtained a merits judgment, even though an earlier order treated it as unserved; and whether merits review, rather than default judgment, is the proper appellate relief.

8. Whether the court prematurely resolved the fact-dependent Texas Tort Claims Act scope-of-employment issue against Swan and, at minimum, whether state-law claims against Montgomery County barred by governmental immunity should have been dismissed without prejudice.

## STATEMENT OF THE CASE

Swan filed this civil-rights action on June 16, 2025. ROA.12. After amendments and motion practice, she filed the Third Amended Complaint at ECF 61. ROA.573-88. The district court granted leave to file it and directed the clerk to treat it as the operative complaint. ROA.666-67. The order also stated that no future motion for leave to amend would be granted before the court ruled on a pending or future motion to dismiss. ROA.666-67.

Deputy Shields and Montgomery County moved to dismiss under Rule 12(b)(6). ROA.703-27. The motion framed the principal constitutional issue as whether false statements “in a police report” stated a constitutional claim. ROA.707-08. Swan opposed dismissal and, in the alternative, requested leave to amend where

necessary. ROA.785-93. The district court held a motion hearing on November 19, 2025. ROA.1158-1204.

On March 24, 2026, the court granted the motion to dismiss. ROA.1134-49. It dismissed the First and Fourteenth Amendment claims, held that Shields was entitled to qualified immunity, dismissed the Monell claim because no underlying constitutional violation had been stated, dismissed the state-law claims under the Texas Tort Claims Act, and dismissed the Constable's Office for lack of jural capacity. ROA.1139-49. The claims against Shields and Montgomery County were dismissed with prejudice; the Constable's Office was dismissed without prejudice. ROA.1148-49. The court also stated that it had considered Swan's numerous notices, objections, and similar filings in conjunction with the motion to dismiss. ROA.1149 n.11.

The court entered final judgment the same day. ROA.1150. Swan timely appealed. ROA.1151-52.

## STATEMENT OF FACTS

In early 2024, Swan reported suspected unauthorized access to her email accounts to the Montgomery County Constable's Office. ROA.1136. She later communicated with neighbors about the activity. Id. A neighbor contacted law enforcement about one of Swan's letters, and Shields dispatched Deputy Harry

Holman, described by the district court as a mental-health officer, to conduct a welfare check on June 7, 2024. ROA.1136-37.

The operative complaint alleged that Holman's encounter with Swan was brief and nonconfrontational and that he concluded she did not meet the criteria for emergency mental-health detention. ROA.577; ROA.1136-37. Swan was not detained, arrested, or searched. ROA.1136. Shields was not the officer who personally conducted the encounter. ROA.1137.

After the encounter, Shields entered an incident report. ROA.1137. The report listed Shields and Holman as responding officers and Shields as the responsible officer. Id. It stated that Swan “may have mental health issues,” attributed to Holman statements that Swan was “severely delusional” and believed Democrats were spying on her, and included the radio code “10-96.” ROA.1137. The parties treated 10-96 as referring to a mental or psychiatric subject. Id. Swan alleged the mental-health and political descriptions were inaccurate and were made without medical evaluation or firsthand observation by Shields. ROA.577-78; ROA.1137-38.

Swan obtained the report through a public-information request, formally disputed it, and asked the Constable's Office to remove the 10-96 and other allegedly false information. ROA.578; ROA.1138. She alleged that no corrective action followed. ROA.1138. The district court's own background section

acknowledged that later-obtained records contained additional allegedly false "10-96" dispatch entries and politically charged notations. Id.

The Third Amended Complaint alleged more than the initial narrative report. It alleged that Shields branded Swan "10-96 Dangerous/Mentally Ill" and "politically delusional" in CAD-related records; that governmental defendants maintained the challenged entries; and that policies or customs permitted stigmatizing caution coding without objective verification, due process, or an expungement mechanism. ROA.581. It further alleged publication of the stigmatizing information in governmental databases, heightened law-enforcement protocols, absence of notice or hearing, and no mechanism to remove the designation. ROA.582.

At the hearing, Swan again tied her First Amendment theory to the sequence between her letters and reports, the neighbor's call, the mental-health dispatch, and the challenged classification. ROA.1195. She described the due-process theory as involving stigmatizing information in a government database without notice, evaluation, hearing, or a removal process. ROA.1196. She also explained that her Monell theory concerned coding and retention practices, lack of objective criteria and corrective procedures, and the statement attributed to Captain Atkins that there was no way to remove a dispatch entry once entered. ROA.1196-97.

The district court nevertheless analyzed the First Amendment claim as the "entry of an incorrect code in a police report," ROA.1139, and later stated that "a police report alone—even if false" was not actionable adverse action, ROA.1140. For due process, the court acknowledged Swan's allegation that information in governmental databases subjected her to heightened law-enforcement protocols, but characterized the asserted status change as a legal conclusion and compared the case to the flyer in Paul v. Davis. ROA.1141-42.

## SUMMARY OF THE ARGUMENT

The judgment should be vacated because the Rule 12 analysis addressed a materially narrower controversy than the operative pleading alleged. The Third Amended Complaint did not claim a freestanding constitutional right to an error-free police report. It alleged an intentional course of conduct involving protected reports and expression, a mental-health dispatch, the 10-96 and political classifications, additional CAD/dispatch entries, governmental dissemination and retention, and an asserted absence of any corrective process. The district court acknowledged many of those allegations in its background section but repeatedly reduced the claims in its legal analysis to one inaccurate code in a police report.

That narrowing mattered. First Amendment retaliation is governed by whether protected activity was followed by official action capable of deterring a person of ordinary firmness, viewed in context. Keenan v. Tejeda, 290 F.3d 252, 258-62 (5th

Cir. 2002). Swan alleged more than criticism or an accusation: she alleged use of operational law-enforcement systems and a specialized mental-health response. Her allegations of timing, political wording, Shields's lack of firsthand observation, and the outcome of Holman's encounter plausibly supported retaliatory motive.

The stigma-plus claim is narrower and more difficult, but it likewise should not have been reduced to reputation alone. Swan alleged a false governmental mental-health classification coupled with direct governmental treatment and an operational caution allegedly affecting police response. At minimum, if the "plus" was pleaded with insufficient specificity, dismissal should have been without prejudice or with leave to amend.

The qualified-immunity and Monell rulings were derivative of the no-constitutional-violation determination. The immunity ruling also disposed of clearly established law in a single sentence and cannot bar municipal or prospective equitable relief. The Monell ruling did not analyze the pleaded no-correction practice, training allegations, or municipal attribution because it stopped at the underlying-violation requirement.

Finally, Rule 15 supplies an independent reason to vacate the with-prejudice judgment. The court granted the Third Amended Complaint and expressly postponed any future amendment until after ruling on a motion to dismiss. It then dismissed with prejudice in the first comprehensive opinion identifying its own

perceived deficiencies. If greater specificity was required, one targeted amendment should have been allowed. The Rule 55 issue warrants clarification rather than a directed default because Montgomery County actually appeared and defended. And the Texas-law dismissal should be reconsidered as to Shields's scope of employment; at minimum, immunity-based dismissal of claims against the County should be without prejudice.

## STANDARDS OF REVIEW

Rule 12(b)(6) dismissals are reviewed de novo. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. Id. The same de novo standard applies when qualified immunity is resolved on the pleadings. Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009). Because the district court dismissed the Monell claim under Rule 12(b)(6), review of that pleading ruling is likewise de novo.

A denial of leave to amend is reviewed for abuse of discretion; when denial rests on futility, the legal conclusion that amendment would fail to state a claim is reviewed under the Rule 12(b)(6) standard. Stripling v. Jordan Production Co., 234 F.3d 863, 872-73 (5th Cir. 2000).

The denial of default judgment is reviewed for abuse of discretion, while legal conclusions embedded in that ruling are reviewed de novo. Escalante v. Lidge, 34 F.4th 486 (5th Cir. 2022).

A pleading-stage ruling under Texas Civil Practice and Remedies Code § 101.106(f), including state-law immunity and scope-of-employment issues resolved from the pleadings, is reviewed de novo, accepting well-pleaded facts as true and viewing them in the plaintiff's favor. Frias v. Hernandez, 142 F.4th 803 (5th Cir. 2025).

## ARGUMENT I

## THE DISTRICT COURT MISCHARACTERIZED THE OPERATIVE COMPLAINT BY REDUCING THE ALLEGED COURSE OF GOVERNMENTAL CONDUCT TO ONE INACCURATE POLICE REPORT.

This Court reviews a Rule 12(b)(6) dismissal de novo, accepting well-pleaded facts as true and drawing reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). A complaint need not use the perfect legal label if its factual allegations give fair notice of the claim. Johnson v. City of Shelby, 574 U.S. 10, 11-12 (2014) (per curiam); Skinner v. Switzer, 562 U.S. 521, 530 (2011).

The operative pleading alleged a course of governmental conduct, not merely an inaccurate historical narrative. It alleged that Shields did not personally conduct

the welfare encounter, that Holman found no emergency-detention basis, that Shields nevertheless caused or entered mental-health and political classifications into official records, that additional dispatch entries contained similar classifications, that the entries were maintained after Swan disputed them, and that no meaningful correction mechanism existed. ROA.577-82. The district court itself acknowledged the later “false dispatch entries” and politically charged notations. ROA.1138.

Defendants' motion framed the question more narrowly: whether false statements “in a police report” stated a constitutional claim. ROA.707-08. The dismissal order adopted that framing in the operative legal analysis. The First Amendment section called the conduct the “entry of an incorrect code in a police report.” ROA.1139. The next page reasoned that “a police report alone—even if false” was insufficient. ROA.1140. The due-process section similarly characterized the alleged deprivation as the entry of a code in a police incident report. ROA.1141-42.

That mismatch is not cured by the order's fuller background recitation. An opinion may acknowledge allegations in its factual section yet still apply the wrong factual premise when testing the legal elements. Here the difference between an inert narrative and a continuing operational classification goes directly to adverse action, stigma-plus, prospective relief, and municipal causation.

The court also resolved a disputed inference from the report itself. Although the complaint alleged Shields falsely portrayed himself as a responding officer, the court held that “responding officer” meant only response to the incoming call, not physical presence. ROA.1137 n.3. A document referenced in a complaint may be considered at Rule 12(b)(6), Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000), but a court should not use an allegedly inaccurate document to resolve a genuinely disputed factual meaning against the pleader unless the document unambiguously contradicts the allegation. The report did not resolve the separate allegations concerning later CAD and dispatch entries.

The judgment therefore should be reviewed on the allegations actually pleaded: an alleged retaliatory and continuing governmental classification, not a freestanding right to an accurate police report.

## ARGUMENT II

## RULE 12(b)(6) REQUIRED ACCEPTANCE OF THE WELL-PLEADED FACTS AND REASONABLE INFERENCES, NOT PROOF BEFORE DISCOVERY.

Rule 12(b)(6) tests plausibility, not proof. Iqbal, 556 U.S. at 678-79. Swan identified actors, dates, the welfare check, the 10-96 designation, political wording, additional dispatch entries, the lack of firsthand observation, her complaint to supervisors, and the asserted lack of any correction process. ROA.577-82. Those

are factual allegations, even though some ultimate conclusions—such as “material alteration of legal status”—need not be accepted as true.

The incident report was also the alleged instrument of misconduct. The court stated that, for purposes of the motion, it accepted Swan's allegation that Shields's description of the Holman interaction was inaccurate. ROA.1137 n.3. Yet the merits analysis treated the dispute as no more than an officer's incorrect opinion in a report. ROA.1139-42. The complaint instead alleged that the entries were knowingly false, placed in official systems, repeated, maintained after notice, and used as a caution associated with Swan. ROA.581-82.

Nor was Swan required before discovery to prove the internal mechanics of the County's CAD system, identify every officer who viewed the entry, or establish every protocol triggered by a 10-96 designation. Those matters concern evidentiary proof and information principally controlled by Defendants. At the pleading stage the question was whether the alleged operational consequences were plausible. The court should not have treated the absence of a completed arrest, detention, or prosecution as proof that the entries had no governmental effect.

Swan's notices and objections do not automatically establish disputed facts merely because they were filed. But they are part of the procedural record showing what theories and materials were presented to the district court. The final order expressly states that the court considered Swan's notices, objections, and similar

documents in conjunction with the motion to dismiss. ROA.1149 n.11. They therefore reinforce that the court had notice of the broader CAD/dispatch theory before dismissing the action with prejudice.

Because the narrowing of the pleaded facts affected the First Amendment, due-process, immunity, Monell, and equitable-relief rulings, the error was prejudicial.

## ARGUMENT III

## THE THIRD AMENDED COMPLAINT PLAUSIBLY ALLEGED FIRST AMENDMENT RETALIATION.

To plead First Amendment retaliation, a private citizen must allege protected activity, an official action capable of deterring a person of ordinary firmness, and a causal connection between the two. Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002). The test is objective; the plaintiff need not prove that she personally stopped speaking. Id.

Swan alleged protected petitioning and expression through reports to law enforcement, complaints to public officials, communications concerning suspected wrongdoing, and political expression. ROA.575-77; ROA.1195. The claim does not depend on whether the physical method by which a letter was delivered was protected conduct; the pleaded retaliation theory also relied on her reports to law enforcement and the political content Shields allegedly placed into governmental

records. The district court itself described the protected activity as Swan's "reports to the police and political views." ROA.1139.

The adverse-action allegations went beyond criticism. Swan alleged that after a neighbor contacted law enforcement about her communications, Shields dispatched a mental-health officer; after Holman found no emergency-detention basis, Shields nevertheless entered or caused the 10-96 and political classifications; additional dispatch records repeated similar classifications; and the information remained in governmental systems. ROA.577-82; ROA.1136-38. At the hearing, Swan expressly tied the neighbor's call, the mental-health dispatch, and the classification to her retaliation theory. ROA.1195.

Keenan is instructive. There the Fifth Circuit considered allegations that constable officials retaliated against citizens who reported misconduct through law-enforcement actions that included false or misleading police reports and other harassment. 290 F.3d at 257-62. Keenan does not hold that every inaccurate report is actionable; it demonstrates that use of police authority and records can be part of a retaliatory course assessed under the ordinary-firmness standard.

Colson v. Grohman, 174 F.3d 498 (5th Cir. 1999), and the unpublished decision in Johnson v. Bowe, 856 F. App'x 487 (5th Cir. 2021), do not compel dismissal of the broader claim. Those cases explain that criticism, accusations, and investigations without sufficiently adverse consequences may be inadequate.

Colson, 174 F.3d at 511-14; Johnson, 856 F. App'x at 493. Swan alleged operational governmental action: a specialized dispatch, law-enforcement database classifications, repeated entries, and continued availability for later police use. Those allegations permit a plausible inference of greater adverse effect than an accusation alone.

Causation was also plausibly alleged. The challenged conduct followed Swan's reports and neighbor communications; the governmental classification itself allegedly used expressly political language; Shields had no firsthand encounter with Swan; Holman found no emergency-detention basis; and the classification allegedly persisted after Swan contested it. ROA.577-82; ROA.1136-38. These facts do not prove retaliatory motive, but Rule 12 did not require proof. They permit the reasonable inference that protected activity was a substantial motivating factor.

The district court emphasized that Swan was not arrested, detained, or prosecuted. ROA.1140. Those are powerful examples of adverse action, but Keenan's ordinary-firmness test does not make them mandatory elements. A citizen could plausibly be deterred from reporting suspected wrongdoing or expressing political views if the alleged consequence is a mental-health police classification and an address-linked caution retained for future official use.

The First Amendment claim should therefore be reinstated.

## ARGUMENT IV

## THE FOURTEENTH AMENDMENT CLAIM ALLEGED STIGMA PLUS GOVERNMENTAL CONSEQUENCES; AT MINIMUM, DISMISSAL WITH PREJUDICE WAS IMPROPER.

Reputational injury alone is not a liberty or property deprivation under the Fourteenth Amendment. Paul v. Davis, 424 U.S. 693, 701-12 (1976). The Fifth Circuit accordingly requires stigma plus infringement of another protected interest. San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 701-04 (5th Cir. 1991); Blackburn v. City of Marshall, 42 F.3d 925, 935-36 (5th Cir. 1995).

Swan plausibly alleged the stigma component. The challenged classifications were not merely that she had a poor attitude or was difficult; they identified her in governmental records as 10-96, mentally ill, and politically delusional. ROA.577-82. The district court recognized that the parties treated 10-96 as a mental or psychiatric subject code. ROA.1137. Swan alleged falsity based on Shields's lack of firsthand observation, absence of a medical evaluation, and Holman's conclusion that emergency detention was unwarranted. ROA.577-78; ROA.1137-38.

The difficult question is the “plus.” Paul rejected a due-process claim based on police circulation of an “active shoplifter” flyer because no state-recognized right or status was altered. 424 U.S. at 712. Swan therefore cannot prevail merely by relabeling reputational injury as a legal-status change. But her complaint alleged additional governmental conduct: publication in operational governmental

databases, an address-linked caution, heightened law-enforcement protocols, continuing retention, and no process to remove or contest the designation. ROA.581-82. The court expressly acknowledged the allegation of publication in governmental databases and heightened law-enforcement danger protocols. ROA.1141.

Kacal confirms that stigma-plus is not categorically limited to public-employment discharge. 928 F.2d at 701-04. There, direct police conduct that allegedly impaired the plaintiff's business interests supplied the additional infringement. Swan's allegations of operational police classification likewise required analysis of what governmental treatment actually accompanied the stigma. Vitek v. Jones, 445 U.S. 480 (1980), does not establish a right to process for every mental-health notation, but it illustrates that the constitutional significance of a mental-health classification turns on the state-imposed consequences accompanying it.

At Rule 12(b)(6), the court should not have assumed that the challenged code was only an inert historical statement when the complaint alleged the opposite. Whether a 10-96 caution automatically appears to dispatchers, what protocols it triggers, which agencies receive it, and whether it remains active are facts within governmental control. Those facts bear directly on whether Swan can prove a cognizable “plus.”

The Court can reverse on the existing pleading if it concludes that the alleged operational governmental burden sufficiently identifies an infringement. At minimum, however, the Fourteenth Amendment claim should not have been dismissed with prejudice. If the existing allegations did not identify a concrete enough protected interest, Swan should have been allowed one targeted amendment specifying the current governmental consequences. See Argument VII infra.

## ARGUMENT V

## THE QUALIFIED-IMMUNITY RULING SHOULD BE VACATED AND REMANDED FOR CLAIM-SPECIFIC ANALYSIS.

Qualified immunity protects an individual officer from damages unless the plaintiff plausibly alleges a constitutional violation and shows that the right was clearly established at the time. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). The right must be defined with adequate specificity, but materially identical precedent is not invariably required where existing law gives fair warning. Hope v. Pelzer, 536 U.S. 730, 741 (2002); Taylor v. Riojas, 592 U.S. 7, 8-9 (2020) (per curiam).

The district court's first-prong ruling was derivative. After concluding that no constitutional claim was stated, it reasoned that Swan “necessarily” failed to overcome qualified immunity. ROA.1144. If the First Amendment or Fourteenth Amendment dismissal is vacated, that premise no longer stands.

The clearly-established analysis was also compressed into a single statement that, even if Swan had stated a claim, “these rights were certainly not clearly established.” ROA.1144. The order did not separately define the First Amendment right, the Fourteenth Amendment right, or the conduct material to each. That matters because qualified immunity is claim- and conduct-specific.

For the First Amendment claim, Keenan had long established that law-enforcement officials may not take materially adverse police action in retaliation for citizens' protected complaints, and that allegedly false or misleading police reports can form part of such a retaliatory course. 290 F.3d at 257-62. Swan does not define the right as a generalized entitlement to accurate records. The asserted right is freedom from materially adverse use of police authority substantially motivated by protected reports and political expression. Keenan and the ordinary-firmness cases supplied substantial fair warning at that level.

The Fourteenth Amendment damages issue is narrower. Existing law clearly establishes that stigma alone is insufficient, and the precise treatment of a false mental-health caution that has not culminated in detention or loss of employment is less clearly settled. The appropriate appellate disposition is therefore at least to vacate the derivative immunity ruling and remand for a claim-specific analysis if the due-process claim is reinstated.

In all events, qualified immunity does not immunize Montgomery County, Owen v. City of Independence, 445 U.S. 622, 638 (1980), and does not by itself bar prospective equitable relief directed to continuing unconstitutional conduct. The district court dismissed Swan's declaratory and injunctive requests only because it found no underlying constitutional violation. ROA.1143 n.7. Reinstatement of an underlying claim requires reconsideration of that prospective relief regardless of Shields's ultimate entitlement to personal damages immunity.

## ARGUMENT VI

## THE DERIVATIVE MONELL DISMISSAL SHOULD BE VACATED IF AN UNDERLYING CONSTITUTIONAL CLAIM IS REINSTATED.

A municipality is liable under § 1983 when its own policy or custom is the moving force behind a constitutional violation. Monell v. Department of Social Services, 436 U.S. 658, 690-94 (1978). A policy can include an officially adopted rule, a sufficiently persistent custom, or action attributable to a final policymaker. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-83 (1986). Failure-to-train liability requires deliberate indifference. City of Canton v. Harris, 489 U.S. 378, 388-92 (1989).

The district court did not adjudicate whether Swan sufficiently pleaded those remaining elements. Its Monell section identified her failure-to-train, supervision, ratification, and no-removal allegations, then dismissed solely because she had not stated an underlying constitutional violation. ROA.1144. Thus, if this Court

reinstates either federal constitutional claim, the stated basis for the Monell dismissal disappears.

The complaint also alleged more municipal facts than respondeat superior. It alleged policies or customs permitting stigmatizing caution codes without objective verification, due process, or expungement; continuing maintenance of the entries; and failure to train concerning mental-health coding. ROA.581-83. Defendants' own motion acknowledged Swan's allegation that Captain Atkins told her the office had no mechanism to remove entries even if false. ROA.720-21. The district court repeated that allegation in its Monell analysis. ROA.1144.

Swan does not contend that Atkins's statement alone proves that he was the final Montgomery County policymaker. Rather, the statement is relevant to the alleged existence of an institutional practice and supervisory notice. At the pleading stage a plaintiff need not always identify the specific policymaker by name if the alleged facts plausibly attribute the policy to the municipality. Groden v. City of Dallas, 826 F.3d 280, 284-86 (5th Cir. 2016). Discovery would identify which County officials control CAD retention, correction, dispatch coding, and training.

The continued-retention theory is also analytically distinct from respondeat superior for Shields's original act. Swan alleged that after officials received notice disputing the classification, the government lacked a mechanism to remove it and

continued to maintain it. ROA.578, 581-82. Whether that alleged practice can be attributed to a final policymaker and whether it was the moving force behind a constitutional injury are questions the district court never reached.

The Constable's Office need not remain as a separate jural defendant for this theory to proceed. The district court itself held that Montgomery County is the proper political entity for claims otherwise directed to the Constable's Office. ROA.1147. The appropriate relief is vacatur of the derivative Monell dismissal against Montgomery County and remand for analysis of the remaining elements.

## ARGUMENT VII

## RULE 15 REQUIRED A MEANINGFUL OPPORTUNITY FOR A FINAL TARGETED AMENDMENT BEFORE DISMISSAL WITH PREJUDICE.

Rule 15(a)(2) directs courts to "freely give leave when justice so requires." Denial may rest on undue delay, bad faith, repeated failure to cure, undue prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182 (1962). Denial is reviewed for abuse of discretion; futility is reviewed under the Rule 12(b)(6) standard. Stripling v. Jordan Production Co., 234 F.3d 863, 872-73 (5th Cir. 2000).

The procedural sequence matters. The district court granted Swan leave to file the Third Amended Complaint and directed that it be filed. ROA.666-67. In the same order, the court stated that no future motion for leave to amend would be granted "before such time as the Court rules on any pending or future Motion to Dismiss." Id. That language did not prohibit amendment after the court ruled; it

expressly postponed any further amendment until the motion-to-dismiss stage had been resolved.

Swan's opposition to the operative motion requested, in the alternative, leave to amend where necessary. ROA.792-93. Yet when the court finally ruled, it dismissed the claims against Shields and Montgomery County with prejudice in the first comprehensive judicial opinion explaining its own perceived deficiencies. ROA.1139-49. The court did not conduct a Foman analysis or explain why the specific deficiencies it identified were incurable.

A final targeted amendment could have clarified, without changing the transaction at issue: the specific protected activity; the sequence showing Shields's knowledge and motive; the distinction between narrative and operational CAD/dispatch entries; the concrete governmental consequence constituting the stigma-plus “plus”; the departments and officials responsible for retention and correction; and the municipal policymaker theory. These are precisely the matters the final opinion found inadequately pleaded.

The fact that Swan had amended earlier does not automatically establish repeated failure to cure the deficiencies identified by the court. Earlier amendments occurred while additional records were being obtained and before the court had explained its own construction of the claims. The Third Amended Complaint itself

was allowed because Swan presented newly surfaced dispatch and CAD information. ROA.589-96; ROA.666-67.

The final order also confirms that the court considered Swan's notices and objections in ruling on dismissal. ROA.1149 n.11. Those materials therefore demonstrate preservation and notice of the broader theory, even though they did not automatically transform disputed facts into admitted evidence.

If this Court concludes that any federal claim was pleaded with insufficient specificity, it should at minimum vacate the with-prejudice dismissal and remand with instructions to permit one final, targeted amendment. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

## ARGUMENT VIII

## THE SERVICE AND DEFAULT RECORD SHOULD BE CLARIFIED, BUT MERITS REVIEW - NOT A DIRECTED DEFAULT - IS THE APPROPRIATE RELIEF.

Rule 55(a) authorizes default only when a party “has failed to plead or otherwise defend.” A defendant that appears and actively seeks dismissal has ordinarily otherwise defended. A valid default judgment also requires well-pleaded allegations establishing liability. Wooten v. McDonald Transit Associates, Inc., 788 F.3d 490, 496 (5th Cir. 2015).

The district court's earlier service rulings and its final treatment of Montgomery County are difficult to reconcile. At the November hearing, Daniel

Plake expressly appeared “for Deputy Shields and Montgomery County.” ROA.1159. He later stated that Montgomery County was “clearly in the case” and that a motion to dismiss had been filed for the County. ROA.1163. The final Memorandum and Order likewise held that the pending motion was filed on behalf of both Shields and Montgomery County and then entered a with-prejudice merits judgment for the County. ROA.1134-35, 1148-49.

Those facts mean Montgomery County was not a nondefending party entitled to be defaulted. They also mean the County should not simultaneously be treated as wholly absent for service/default purposes while receiving a merits judgment. The more precise disposition is that Montgomery County appeared and defended; any service objection must be analyzed consistently with Rules 12(b)(5) and 12(h), while Rule 55 no longer supplies a basis for default once the County actively defended.

The Constable's Office stands differently. The district court held that it lacked demonstrated jural capacity and had not been properly served. ROA.1147-49. Swan's strongest appellate relief therefore does not require a directed default against that office. It requires preserving Montgomery County as the proper municipal defendant and remanding reinstated claims for merits adjudication.

Accordingly, the Court should clarify the party/service status and vacate any inconsistent premise that Montgomery County was absent, but it need not direct entry of default judgment.

## ARGUMENT IX

## THE STATE-LAW DISPOSITION SHOULD BE REVERSED OR MODIFIED UNDER THE TTCA AND § 101.106(f).

Texas Civil Practice and Remedies Code § 101.106(f) requires dismissal of an employee when a tort suit is based on conduct within the general scope of employment and could have been brought under the TTCA against the governmental unit. Franka v. Velasquez, 332 S.W.3d 367, 379-85 (Tex. 2011). The phrase “could have been brought” is broad, so the intentional-tort exclusion in § 101.057 does not by itself prevent § 101.106(f) from applying. Alexander v. Walker, 435 S.W.3d 789, 790-92 (Tex. 2014).

The disputed element is scope of employment. Texas defines scope objectively as performance for the governmental unit of the duties of the employee's office, including performance of a lawfully assigned task. Tex. Civ. Prac. & Rem. Code § 101.001(5). Subjective malice or an improper motive ordinarily does not remove conduct from scope when the activity is objectively of the same general nature as assigned duties. Frias v. Hernandez, 142 F.4th 803, 806-08 (5th Cir. 2025). But Texas also recognizes that an employee acts outside scope

when he embarks on an independent course of conduct not intended to serve any purpose of the employer. Alexander, 435 S.W.3d at 792.

The district court defined the alleged conduct as Shields's “response to a 911 call and entry of an incident report” and held that it was clearly within scope regardless of truth or falsity. ROA.1146. Swan's pleaded theory was narrower in timing and broader in conduct: the on-scene welfare check ended without detention; Shields allegedly lacked firsthand observation; and she alleged later or additional political and mental-health classifications, dissemination, and continued operational entries serving a retaliatory purpose rather than an active investigation. ROA.577-82; ROA.1136-38.

Frias is a serious obstacle and should not be minimized. There the Fifth Circuit held that investigative and charging activities remained objectively within a detective's duties despite allegations of private motive and concealment. 142 F.4th at 806-08. Swan's distinction is that the complaint plausibly alleged a separate post-encounter course after the welfare function had concluded, with no arrest, crime investigation, or emergency detention to pursue. Whether that distinction ultimately succeeds should be evaluated on the alleged objective acts, not merely by labeling all conduct “entry of an incident report.”

If the existing pleading did not separate the allegedly independent course from ordinary report preparation with sufficient precision, Rule 15 provides an

alternative remedy: permit a targeted amendment specifying which entries were made after the assigned welfare task ended, what official function each entry served, and which actions allegedly served no County purpose.

The claims against Montgomery County present a separate issue. Section 101.057 preserves governmental immunity for defamation and other intentional torts. The district court held there was no TTCA waiver for Swan's defamation and fraud claims against the County. ROA.1146. A dismissal for lack of governmental-immunity waiver is jurisdictional and should be without prejudice rather than an adjudication on the merits. See Goodman v. Harris County, 571 F.3d 388, 394 (5th Cir. 2009). Yet the final judgment dismissed the claims against Montgomery County with prejudice. ROA.1148-50. At minimum, that portion of the judgment should be modified to a dismissal without prejudice.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court:

1. reverse the dismissal of the First Amendment retaliation claim;
2. reverse or vacate the dismissal of the Fourteenth Amendment stigma-plus claim, or alternatively vacate the with-prejudice disposition and permit targeted amendment;

3. vacate the qualified-immunity ruling and remand for claim-specific analysis, while preserving municipal and prospective-relief claims not governed by qualified immunity;
4. vacate the derivative dismissal of the Monell claim against Montgomery County;
5. vacate the with-prejudice judgment to the extent curable pleading deficiencies were dismissed without a final opportunity to amend under Rule 15(a)(2);
6. clarify that Montgomery County appeared and defended and remains the proper municipal defendant, without directing default judgment;
7. reverse or vacate the dismissal of the individual-capacity state-law claims against Shields for further consideration of scope of employment, or alternatively permit targeted amendment; and
8. modify the dismissal of state-law tort claims against Montgomery County to be without prejudice.

Appellant requests remand for further proceedings, including appropriate discovery, and all other relief to which she is entitled.

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,055 words, excluding the portions exempted by Rule 32(f). It uses a proportionally spaced 14-point Times New Roman typeface.

/s/ Deborah Swan

Deborah Swan, Appellant Pro Se

Date: 08/14/2026

## CERTIFICATE OF SERVICE

I certify that on 08/14/2026, 2026, I served a true and correct copy of this Brief of Plaintiff-Appellant Deborah Swan on counsel for Appellees, Daniel Plake, Montgomery County Attorney's Office, 501 N. Thompson Street, Suite 300, Conroe, Texas 77301, daniel.plake@mctx.org, by the following method authorized by the Federal Rules of Appellate Procedure and applicable Fifth Circuit procedures: ________________________________.

/s/ Deborah Swan

Deborah Swan, Appellant Pro Se