**Case No. 26-20161**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**Deborah Swan,**

***Plaintiff – Appellant,***

**v.**

**Deputy Water Shields, Individually and in his Official Capacity; Montgomery County Constable's Office, Precinct 3; Montgomery County, Texas; Captain Michael Atkins,**

***Defendants – Appellees.***

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
Civil Action No. 4:25-CV-2799

# BRIEF OF APPELLEES:
## Deputy Walter Shields and Montgomery County, Texas

Daniel Plake
SBN: 24062942
FED ID No.: 918023
501 N. Thompson, Ste. 300
Conroe, Texas 77301
Tel: (936) 539-7828
Fax: (936) 760-6920
Daniel.Plake@mctx.org
ATTORNEY FOR APPELLEES,
Shields and Montgomery County, Texas

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **Deborah Swan,** | *Appellant, pro se* |
| **Walter Shields, Individually and in his official Capacity and Montgomery County, Texas** | *Appellees* |
| **Daniel Plake**,<br>**Adam Anderson,** *and*<br>**B.D. Griffin**, County Attorney<br>Montgomery County Attorney's Office<br>501 North Thompson, Suite 300<br>Conroe, Texas 77301<br>Daniel.Plake@mctx.org<br>Adam.Anderson@mctx.org | *Counsel for Appellees,* |
| **Montgomery County Constable's Office, Precinct 3, And Captain Michael Atkins** | *Unserved/non-appearing Parties* |
| **The Honorable Keith P. Ellison** | *United States District Court Judge – trial judge* |

__s/ Daniel Plake____________________
Attorney of Record for Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe this case warrants oral argument because the issues presented resolve around a legal sufficiency argument and there do not appear to be any unique or difficult issues of law for this Court to consider.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF CONTENTS.......................................................................... iii

TABLE OF AUTHORITIES .......................................................................... vi

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................1

STATEMENT OF THE CASE..........................................................................2

Relevant Procedural History: ...........................................................................2

Facts relevant to Issues Submitted for Review: ...................................................2

Rulings Presented for Review: ..........................................................................2

SUMMARY OF THE ARGUMENT ................................................................2

ARGUMENT ...................................................................................................3

Standard of Review: ........................................................................................3

*12(b)(6) Standard of review generally:* ..................................................................3

*The qualified immunity standard:*...........................................................................5

*The Court may consider some evidence:* ................................................................5

*Denial of Leave to Amend:* ....................................................................................6

*Denial of Motion for Default:* .................................................................................6

Issue 1: The District Court correctly determined that Swan's allegations, accepted as true, failed to state a valid claim. ......................................................6

*Swan did not state a valid Fourth Amendment claim:* ........................................6

*Swan did not state a cognizable Fourteenth Amendment claim:* .........................7

*Swan does not have a right to dictate the contents of the police report:* ........8

Issue 2: Swan's mere conclusion that an officer's actions were "knowingly false" does not transform Swan's allegations into a plausible claim. .................... 9

Issue 3: The Third Amended Complaint did not plausibly alleged First Amendment retaliation. .......................................................................... 10

*Swan's protected activity:* .......................................................................... 10

*An officer's failure to take a report did not cause Swan to suffer an injury because she does not have a right to have someone else prosecuted:* .......... 11

*Deputy Shields' entry into the report did not cause Swan to suffer an injury:* .......................................................................................... 12

*Swan does not plausibly allege a retaliatory motive for Shields' entry in the report:* .......................................................................................... 14

Issue 4: Swan did not plead a valid Fourteenth Amendment stigma-plus claim and it was properly dismissed with prejudice. .................................................. 15

*Swan does not adequately allege a stigma-plus claim:* ................................ 15

*The content of the police report does not meet the infringement standard:* . 16

*Swan's allegations of isolation and reputational harm do not meet the infringement standard:* .......................................................................... 17

Issue 5: Swan failed to overcome either prong of Shield's qualified immunity defense. .......................................................................................... 18

Issue 6: Swan failed to plead a claim against Montgomery County under *Monell*, failure to train, or ratification. ................................................ 19

*Swan's pleadings are dispositive of her Monell claim:* ................................ 19

*Failure to train or supervise:* ...................................................................... 21

*Ratification:* ................................................................................................ 22

Issue 7: Dismissal with prejudice of Swan's Third Amended Complaint was not an abuse of discretion where Swan had already had multiple attempts to replead, continually used AI to drive up litigation costs, and repleading would have been futile. .......................................................................................... 23

Issue 8: Swan's failure to serve the Constable's Office is fatal to her attempt to obtain a default judgment against it....26

Issue 9: Shields is immune from Swan's state law tort claims because the Texas Tort Claims Act does not waive immunity for the claims. ....27

*Election of remedies requires dismissal of the claims against Deputy Shields:* 27

CONCLUSION....30

CERTIFICATE OF SERVICE....30

CERTIFICATE OF COMPLIANCE....31

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Philip R. Taft Psy D and Assoc., P.L.L.C.,* 165 F.4th 309 (5th Cir.2025)....................8

*Alexander v. Walker,* 435 S.W.3d 789 (Tex. 2014)....................28

*Anderson v. Bessman,* 365 S.W.3d 119 (Tex.App.—Houston[1st Dist.], 2011, no pet.)....................27

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009)....................3

*Baily v. City of Jasper, Tex.,* No. 1:12-cv-153, 20212 WL 4969126 (E.D. Tex. Sept. 24, 2012), report and recommendation adopted, No. 1:12.cv.153, 2012 WL 4970809 (E.D. Tex. Oct. 17, 2012) (not published)....................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)....................3

*Blackburn v. City of Marshall,* 42 F.3d 925 (5th Cir.1995)....................15

*Brown v. Glossip*, 878 F.2d 871 (5th Cir.1989)....................4

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir.1996)....................3

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir.1994)....................4

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)....................5

*Colson v. Grohman,* 174 F.3d 498 (5th Cir.1999)....................9

*Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir.1986)....................22

*Darby v. Pasadena Police Dep't,* 939 F.2d 311 (5th Cir. 1991)....................26

*Doe v. Ferguson,* 128 F.4th 727 (5th Cir.2025)....................8

*Estate of Davis ex rel McCully v. City of North Richmond Hills*, 406 F.3d 375 (5th Cir. 2005)....................21

*Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278 (5th Cir.1993)....................3

*Franka v. Velasquez,* 332 S.W.3d 367 (Tex. 2011).................... 27, 28

*Frias v. Hernandez,* 142 F.4th 803 (5th Cir.2025) ..................................................28

*Grandstaff v. City of Borger*, 767 F.2d 161(5th Cir.1985) .......................................22

*In re Katrina Canal Breaches Litig.,* 495 F.3d 191 (5th Cir.2007) ............................3

*Izen v. Catalina,* 398 F.3d 363 (5th Cir.2005) ...........................................................9

*Jackson v. City of Beaumont Police Depart.*, 958 F.2d 616 (5th Cir.1992) .............4

*Jarett v. Twp. Of Bensalem,* 312 F.App'x 505 (3rd Cir.2009) (unpublished opinion) ..........................................................................................................................8

*Johnson v. BOKF Nat. Assoc.,* 15 F.4th 356 (5th Cir.2021) .....................................9

*Johnson v. Bowe,* 856 Fed.Appx. 487 (5th Cir.2021) ...............................................12

*Keenan v. Tejeda,* 290 F.3d 252 (5th Cir.2002) .......................................................18

*Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ........18

*Leatherman v. Tarrant County Narcotics Intel. & Coordination Unit*, 954 F.2d 1054 (5th Cir.1992) rev'd on other grounds, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed. 517 (1993) .............................................................................................4

*Martinez v. Hardy*, 864 S.W.2d 767 (Tex.App.—Houston[14th], 1993, no writ) ..29

*Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ........................................................................................................................19

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir.2007) .................................................5

*Oliver v. Collins,* 914 F.2d 56 (5th Cir.1990) ..........................................................10

*Paul v. Davis.* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed. 2d 405 (1976) ............. 14, 15

*Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed. 2d 565 (2009) .......17

*Pena v. Jimenez*, 31 Fed. Appx. 833 (5th Cir.2002) (Not selected for pub.) ..........20

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir.2002) ..........................................21

*Rhode v. Denson*, 776 F.2d 107 (5th Cir.1985) .......................................................20

*Rhyne v. Henderson County,* 973 F.2d 386 (5th Cir.1992) .....................................18

*Rich v. Palko,* 920 F.3d 288 (5th Cir.2019) .......... 7

*Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir.1996) .......... 3

*Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) .......... 15

*Smith v. Patri,* 99 F.App'x 497 (5th Cir.2004) (unpublished opinion) (per curiam) 8

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir.1996) .......... 23

*Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863 (5th Cir.2000) .......... 25

*Texas v. Thompson,* 70 F.3d 390 (5th Cir.1995) .......... 15

*Thompson v. Clark,* 596 U.S. 36, 142 S.Ct. 1332, 212 L.Ed. 2d 382 (2022) .......... 6

*Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir.2009) .......... 23

*U.S. ex rel. Willaims v. Bell Helicopter Textron Inc.,* 417 F.3d 450 (5th Cir.2005) .8

*Wimm v. Jack Eckerd Corp.,* 3 F.3d 137 (5th Cir.1993) .......... 24

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 101.057 .......... 30

TEX. CIV. PRAC. & REM. CODE § 101.106 .......... 28

TEX. HEALTH & SAFETY CODE § 573.001(a)(1)(B) .......... 21

**Rules**

FED. R. CIV. P. 12(B)(6) .......... 4

FED. R. CIV. P. 8(a)(2) .......... 4

FED. R. CIV. PRO. 15 .......... 24

FED. R. CIV. PRO. 4(m) .......... 27

FED. R. CIV. PRO. 9(b) .......... 9

FED. R. EVID. 201(b) .......... 6

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**<u>Issue 1</u>:** Whether the District Court properly applied the Rule 12(b)(6) standard of review.

**<u>Issue 2</u>[2]:** Whether the District Court erred its application of the 12(b)(6) standard of review.

**<u>Issue 3</u>:** Whether the Third Amended Complaint plausibly alleged First Amendment retaliation.

**<u>Issue 4</u>:** Whether the Fourteenth Amendment stigma-plus claim was properly dismissed with prejudice.

**<u>Issue 5</u>:** Whether the qualified-immunity ruling should be vacated.

**<u>Issue 6</u>:** Whether the derivative dismissal of the Monell claim should be vacated.

**<u>Issue 7</u>:** Whether dismissal with prejudice was an abuse of discretion considering Plaintiffs' Third-Amended Complaint failed to state an actionable claim and any attempts to amend would have been futile.

**<u>Issue 8</u>:** Whether the District Court's service/default rulings should be clarified.

**<u>Issue 9</u>:** Whether the District Court erred in dismissing that state law claims.

[2] Swan's Issues Presented do not match the Arguments in her brief, she did not include her second argument in her Issues Presented section. Appellee's Issues Presented match the arguments contained in the brief, therefore Issues three-nine do not match the numbers in Swan's Issues Presented section.

## STATEMENT OF THE CASE

**<u>Relevant Procedural History</u>:**

Appellees agree with Appellant's procedural history, with the exception that although the Court found the Constable's Office lacked *jural* capacity, it also found that the Constable's Office had not been served nor had it appeared. ROA.1147

**<u>Facts relevant to Issues Submitted for Review</u>:**

Appellees agree with Appellant's factual statement.

**<u>Rulings Presented for Review</u>:**

The Court denied Appellant's Motion for Default Judgment against the Montgomery County Precinct 3 Constable's Office. ROA.1132-33.

The Court granted all Defendants' Motions to Dismiss for Failure to State a Claim upon Which Relief can be Granted, and entered final judgement in their favor. ROA.1134-50.

## SUMMARY OF THE ARGUMENT

Swan's state and constitutional claims stem from a police report drafted by Deputy Shields related to the June 7, 2024 welfare check on Swan. Swan alleges that, in the report, Shields falsely asserted that Swan had mental health problems. In addition, she alleges the report was improperly classified as a criminal report rather than a welfare check.

Swan's reliance on the First Amendment and Fourteenth Amendment suffers

from the same fatal flaws. First, she is not entitled to an accurate police report, and second, she was not harmed in any cognizable way. Even if her allegations are true, she has not stated a valid constitutional claim. Furthermore, Deputy Shields is entitled to qualified immunity from this suit because the case law does not clearly establish Swan's constitutional claims.

Swan's claims against Deputy Shields in his official capacity are really claims against Montgomery County. Swan's *Monell* theory fails because she failed to plead a violation of her constitutional rights, and she did not identify a county policy or policy maker. Her ratification and failure to train theories are sparsely pled and without merit.

Swan's attempt to default the Montgomery County Precinct 3 Constable's Office fails because she did not serve the Constable's Office, nor did it appear.

Deputy Shields is immune from Swan's state law claims because the Texas Tort Claims Act does not waive immunity for the alleged torts. Swan did not bring state law claims against Montgomery County, but if she had, it is also immune.

## ARGUMENT

**<u>Standard of Review</u>:**

***12(b)(6) Standard of review generally:***

This Court reviews a district court's dismissal under Rule 12(b)(6) *de novo*. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 204 (5th Cir.2007).

A motion to dismiss for failure to state a claim should be granted when the claimants fail to demonstrate they can prove any facts which would entitle them to relief. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir.1996). The complaint must be liberally construed in the claimants' favor and all factual allegations taken as true. *Fernandez-Montes v. Allied Pilots Ass'n*., 987 F.2d 278, 284 (5th Cir.1993). However, "[t]he court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save the complaint." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1996). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) (citing FED. R. CIV. P. 8(a)(2)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 679 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)). The Court may first determine which facts are entitled to the assumption of truth, and then consider whether those facts plausibly suggest an entitlement to relief. *Iqbal,* 556 U.S. at 680. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusion." *Id.* at 678. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal citations

omitted).

***The qualified immunity standard:***

Deputy Shields is entitled to raise immunity as a defense to Plaintiff's Section 1983 claims. *Brown v. Glossip*, 878 F.2d 871, 873-74 (5th Cir.1989) and *Jackson v. City of Beaumont Police Depart.*, 958 F.2d 616, 620 (5th Cir.1992). "One of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit." *Jackson,* 958 F.2d *at* 620 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 954 F.2d 1054, 1057 (5th Cir.1992) rev'd on other grounds, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed. 517 (1993)). "[P]laintiffs who invoke § 1983 must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints complaining conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Id*.

***The Court may consider some evidence:***

The Court may take judicial notice of facts to resolve a 12(b)(6) motion without converting the motion to a motion for summary judgment. See *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.1994) (court may refer to public record when deciding 12(b)(6) motions); see also *Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir.2007) (proper to take judicial notice of a state court summary judgment in deciding a 12(b)(6) motion); FED. R. EVID. 201(b) (court may judicially notice

facts not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned).

Defendants may attach documents that "are referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citations omitted).

The adjudicative facts in this case are the police report, request by Swan for the police report, and the brief to the Attorney General. ROA.728-37. They are public records, and specifically referenced and central to the claims in the Third Amended Complaint.

***Denial of Leave to Amend:***

Appellee agrees with Appellant's stated Standard of Review for abuse of discretion.

***Denial of Motion for Default:***

Appellee agrees with Appellant's stated Standard of Review for abuse of discretion.

**Issue 1: The District Court correctly determined that Swan's allegations, accepted as true, failed to state a valid claim.**

***Swan did not state a valid Fourth Amendment claim:***

Generally, a Fourth Amendment claim is brought for the "wrongful initiation of charges without probable cause." *Thompson v. Clark,* 596 U.S. 36, 43, 142 S.Ct. 1332, 212 L.Ed. 2d 382 (2022). Swan's Fourth Amended claim does not allege that

Deputy Shields arrested or searched her, or that charges were brought against her. ROA.1021-22. Swan has not alleged sufficient facts entitled to be accepted as true that demonstrate Shields violated her Fourth Amendment Rights.

***Swan did not state a cognizable Fourteenth Amendment claim:***

The basis for Swan's Fourteenth Amendment claim is that (1) she did not have the opportunity to refute the content of the police report in which she was identified as mentally ill, and (2) that she suffered an injury from the stigma of being identified as mentally ill. See ROA.582 *at* ¶¶ *35-39.*

The due process clause of the Fourteenth Amendment provides "nor shall any state deprive any person of life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV, § 1.

Swan seeks an injunction requiring Montgomery County to remove information from police reports. See ROA.568 *at* ¶ *54*. Swan asks this Court to require law enforcement agencies to have a mechanism by which people can review reports and demand changes to the officer's observations, statements, beliefs, and conclusions; and if the officer does not change the report, the officer can be sued. Such a policy would have a disastrous effect. Swan's position would decimate the evidence in criminal cases. It is not hard to imagine cross-examination of an officer in a criminal trial in which the officer states he changed the report because he did

not want to face a suit by an angry person. This would destroy the value of the report by creating a perverse incentive for people to contest the reports.

In Swan's case, the system worked exactly how it is supposed to work. Law enforcement received a complaint, identified that it may involve someone with mental health issues, and dispatched a mental health officer to make contact with the subject. After contact, the officers wrote a report documenting their experience. Because Swan was never detained or arrested – either for a crime or on an emergency detention order – the report was closed.

Because the report did not deprive any person of life, liberty, or property, she had no right to any additional due process.

***Swan does not have a right to dictate the contents of the police report:***

Even if the report is not accurate, that is not an infringement of Swan's rights because she does not have a right to an accurate police report. See *Rich v. Palko,* 920 F.3d 288, 297-298 (5th Cir.2019) (The Plaintiff "fails to identify a single case suggesting that an individual has a right to be free from inaccuracies in an after-the-fact police report or that an inaccurate report serves as a sort of continuing constitutional violation…") (citing *Smith v. Patri,* 99 F.App'x 497, 498 (5th Cir.2004) (unpublished opinion) (per curiam) ("[T]here is no right to a completely accurate police report.") and *Jarett v. Twp. Of Bensalem,* 312 F.App'x 505, 507 (3rd

Cir.2009) (unpublished opinion) ("[T]the mere existence of an allegedly incorrect police report fails to implicate constitutional rights.")).

**<u>Issue 2[3]</u>: Swan's mere conclusion that an officer's actions were "knowingly false" does not transform Swan's allegations into a plausible claim.**

Swan appears to assert that her allegation that the officer's action were "knowingly false" is sufficient to state a claim. Swan's conclusory allegation does not meet the particular pleading requirement of Rule 9(b). *U.S. ex rel. Willaims v. Bell Helicopter Textron Inc.,* 417 F.3d 450, 453-54 (5th Cir.2005). Swan's allegation is nothing more than a legal conclusion not entitled to be accepted as true. *Doe v. Ferguson,* 128 F.4th 727, 735 (5th Cir.2025) (conclusory statements "about a defendant's subjective state-of-mind" are insufficient under *Iqbal*), see also *Alexander v. Philip R. Taft Psy D and Assoc., P.L.L.C.,* 165 F.4th 309, 321-22 (5th Cir.2025) (alleging officers were subjectively aware Plaintiff was not suicidal is insufficient to state a valid claim against the officers).

Swan contests the lack of discovery. Even if she had raised this issue in the District Court, she is not entitled to discovery until she states a plausible claim. *Johnson v. BOKF Nat. Assoc.,* 15 F.4th 356, 365 (5th Cir.2021) (citations omitted).

[3] Swan's Issues Presented do not match the Arguments in her brief, she did not include her second argument in her Issues Presented section. Appellee's Issues Presented match the arguments contained in the brief, therefore Issues three-nine do not match the numbers in Swan's Issues Presented section.

Swan asserts that the District Court considered her other pleadings, and cites ROA.1149 n.11 for support of that contention. In the referenced footnote to the Memorandum and Opinion, the District Court indicated that it is not taking any action on Swan's numerous filings because this Memorandum and Opinion resolves the case and those remaining filings are therefore moot.

Because the facts as alleged by Swan do not plausible allege a valid cause of action, the District Court properly dismissed this case.

**<u>Issue 3</u>: The Third Amended Complaint did not plausibly alleged First Amendment retaliation.**

Generally speaking, "the First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson v. Grohman,* 174 F.3d 498, 508 (5th Cir.1999). To succeed on her claim, Swan must allege "(1) [she was] engaged in constitutionally protected activity, (2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [her] exercise of constitutionally protected conduct." *Izen v. Catalina,* 398 F.3d 363, 367 (5th Cir.2005) (internal citation omitted).

***Swan's protected activity:***

Swan "report[ed] cyberstalking, data intrusions, and misconduct to law enforcement" which she characterizes as "protected speech and petitioning activity."

ROA.575 *at ¶ 7 and* ROA.581 *at ¶ 31.* She reported these allegations to a Montgomery County Sheriff's Office Detective. ROA.575 *at ¶ 10.* On May 31, 2024, Swan "attempted to file a formal report with Montgomery County Constable Precinct 3 deputies regarding" her complaints of criminal activity. ROA.575 *at ¶ 11.*

***An officer's failure to take a report did not cause Swan to suffer an injury because she does not have a right to have someone else prosecuted:***

Deputies did not take Swan's report or investigate; instead, they advised her to "change her password." ROA.576 *at ¶ 12.* Because of the lack of action by the deputies, Swan took matters into her own hand by placing letters in her neighbors' mailboxes. ROA.576 *at ¶ 13.*

Most of Swan's factual allegations involve her attempt to prove she had a valid criminal case against her neighbors. ROA.575-76 *at ¶¶ 7 - 14.* Swan's reliance on these allegations is misplaced; the strength of her criminal allegations is not relevant. The issue is whether she has a constitutional right to have someone else prosecuted; she does not. *Oliver v. Collins,* 914 F.2d 56, 60 (5th Cir.1990) (a person "does not have a constitutional right to have someone criminally prosecuted.") and *Baily v. City of Jasper, Tex.,* No. 1:12-cv-153, 20212 WL 4969126, at *3 (E.D. Tex. Sept. 24, 2012), report and recommendation adopted, No. 1:12.cv.153, 2012 WL 4970809 (E.D. Tex. Oct. 17, 2012) (not published) (dismissing 1983 claims alleging failure to investigate a sexual assault).

***Deputy Shields' entry into the report did not cause Swan to suffer an injury:***

On June 7, 2024, Deputy Shields sent Holman, a mental health officer, to conduct a welfare check on Swan. ROA.577 *at ¶¶ 18, 19, and* ROA.579 *at ¶ 26.* Holman did not detain Swan and determined that she did not exhibit signs of mental illness. ROA.577 *at ¶¶ 19 and 21.* After that encounter, Deputy Shields created a law enforcement report in which he identified Swan as mentally ill and "politically delusional." ROA.576-77 *at ¶¶ 15, 18, 20, 21 and 26B and D.* Deputy Shields also described Swan as "10-96." *See e.g.,* ROA.576 *at ¶ 15.* Deputy Shields told Swan's neighbors to monitor Swan. ROA.579 at ¶ 26.A.

Swan asked the District Court to take judicial notice of the meaning of "10-96". ROA.74. Shields agrees that Texas 10 codes are subject to judicial notice, and that "'10-96' refers to a "'mental subject'", 'psychiatric subject', or 'person with mental illness'" is a fair representation of the meaning of 10-96. ROA.74. Shields disagrees with Swan's attempt to expand the meaning (which she provided) to include a danger component. See ROA.77. Swan's own exhibit demonstrates that 10-96 does not include a danger component. ROA.75 *(referencing "Exhibit A" (*ROA.78*)).* Swan's attempt to impute a "dangerous" component on the 10-96 code is without merit. First, she is inconsistent on her allegation. Compare ROA.576 *at ¶¶ 15, 26B and 32 ("10-60 Dangerous/Mentally Ill") and* ¶ 20 ("10-96" (dangerous/mentally ill) – no quotes around dangerous). See also ROA.462 *at*

*00:03:037 and pg. 49 at 00:06:23*. (Swan alleges she was designated as "1096" in 2022, by Officer Rivera.) Second, the reports do not support including a "dangerous" component; they consistently indicate that she has mental health issues and large dogs. See *e.g.,* ROA.734, *and* ROA.236, ROA.496 ("Deborah Swan is 10-96, has political delusions. 2 large dogs at location.") See also ROA.734 (police report indicating "Possible mental health issue.", "…this person may have mental health issues…", "I had dispatch put a caution on Deborah's address…to advise other deputies that she had mental health issues and that she had large dogs at the location.") Appellee's counsel is unable to find a reference describing Swan as "dangerous" (it is conceivable that her dogs are considered dangerous.)

In the Fifth Circuit, being "the victim of criticism, an investigation (or an attempt to start one), and false accusations: [are] all harms that…are not actionable under our First Amendment retaliation jurisprudence." *Johnson v. Bowe,* 856 Fed.Appx. 487, 493 (5th Cir.2021) (internal citations omitted). Swan's claims are foreclosed by *Johnson*.

In addition to the content of the report, Swan alleges that Deputy Shields thwarted her attempt to obtain a copy of the report by characterizing it as a criminal investigation so that it could be withheld under the Public Information Act. ROA.579 *at ¶ 25*. Swan's allegation is not entitled to be accepted as true because the report shows her allegation is incorrect. ROA.731 *("Nature: INFORMATION),*

ROA.734 *("Possible mental health issue" and "For information only"), and* ROA.734 *(Swan was evaluated for an emergency detention order related to her mental health, not criminal activity).* Furthermore, the brief to the Attorney General did not refer to this as a criminal investigation. ROA.729 (the report "relates to an investigation…that did not result in conviction or deferred adjudication.")

***Swan does not plausibly allege a retaliatory motive for Shields' entry in the report:***

Swan alleges she was targeted because of her political viewpoints *(*ROA.581 *at ¶ 31*) and that Constable Deputies mocked her for wearing a Trump hat, *(*ROA.580 *at ¶¶ 26E and 27)*. Swan does not draw any connection between her political beliefs and Shields' motivation for making an entry into the police report. To be sure, she concludes that it must be because of her political beliefs; but her insistence on that (and her pleadings in this case) also support Deputy Shields' belief that Swan suffers from political delusions related to persecution for her political beliefs.

Although Swan characterizes Deputy Shields' action as failing to take a police report, that simply is not accurate. Deputy Shields' did create a police report; it just does not say what Swan desires. By this lawsuit, Swan is attempting to dictate what an officer believes and the content of a police report. Allowing the subject of the investigation to dictate what officers put in police report would have a devastating effect on the criminal justice system. Swan's position would require police to believe everyone all of the time. That is obviously not sustainable. How will police

document what they say in a domestic violence case when the persons involved tell opposite stories? How can officers protect themselves from known or suspected gang members if they are not permitted to document their observations? How can officers reduce the risk to persons suffering from mental health issues if they cannot document that a person's statements may be due to something other than reality? See *Alexander,* 165 F.4th, at 322 (discussing the dangers of requiring officers to choose whether or not to believe an inmate is suicidal).

Not only does Swan fail to plead a plausible retaliatory motive, her proposed solution is unworkable.

**Issue 4: Swan did not plead a valid Fourteenth Amendment stigma-plus claim and it was properly dismissed with prejudice.**

***Swan does not adequately allege a stigma-plus claim:***

Swan cites *Paul v. Davis,* to support her stigma-plus cause of action. ROA.582 *at ¶ 35*. In *Paul*, the Supreme Court recognized that stigma caused by defamation alone is not actionable under the Fourteenth Amendment. *Paul v. Davis.* 424 U.S. 693, 709, 96 S.Ct. 1155, 47 L.Ed. 2d 405 (1976). The Supreme Court reiterated that damage to reputation alone is insufficient. *Id.,* at 711-712.

<u>*Swan does not adequately allege a "stigma":*</u>

"To satisfy the stigma prong of this test, 'the plaintiff must prove that the stigma was caused by a false communication.' Moreover, we have found sufficient stigma only where a state actor has made concrete, false assertions of wrongdoing

on the part of the plaintiff." *Blackburn v. City of Marshall,* 42 F.3d 925, 936 (5th Cir.1995) (internal citations and emphasis omitted).

In this case, Deputy Shields documented that Swan has "possible mental health issues" and "had mental health issues and…large dogs". ROA.734. These statements do not allege wrongdoing. They are not concrete facts; rather, Deputy Shields included his opinion of Swan's condition based on the information available to him. *Id*.

*Swan does not adequately allege an "infringement":*

"Allegations of damage to one's reputation or the impairment of future employment prospects fail to state a claim of denial of a constitutional right." *Texas v. Thompson,* 70 F.3d 390, 392 (5th Cir.1995) (citing *Siegert v. Gilley,* 500 U.S. 226, 233-34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). "However, damage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983." *Thompson,* 70 F.3d at 392 (citing *Paul,* 424 U.S. at 710–12).

***The content of the police report does not meet the infringement standard:***

For the same reasons explained in the section "*Deputy Shields' entry into the report did not cause Swan to suffer an injury"* the entries in the police report did not infringe on Swan's constitutional rights. *Supra at Issue 3.*

***Swan's allegations of isolation and reputational harm do not meet the infringement standard:***

Swan alleges that the designation in the police report created "reputational harm", "social isolation", "emotional distress", "risk of escalated law-enforcement encounters", and "chilling of speech." ROA.579 – 580 *at ¶¶ 26A, 27, and 29*. Swan further alleges that Deputy Shields instructing neighbors to "lock the doors" and call police adds to the effects of the stigma. *Id., at ¶ 26A and 26F*. On their face, Swan's allegations fail to plausibly suggest a stigma-plus claim. When put into context, her allegations fall even further from being actionable. Deputy Shields was not going around telling neighbors to be weary of Swan; he was responding to those neighbors' complaints about Swan. ROA.734. It is far more plausible that Swan is isolated from her neighbors because she accused them of spying on her than it is because of any action taken by Deputy Shields. Swan's alleged risk of escalated law-enforcement encounters also fails. As seen by the report, the officers did not charge her with any crimes, pull their weapons on her, or even detain her. Rather, they spoke with her and talked about issues she was having. It is also obvious from the pleadings she has filed in this case that the encounter has not chilled Swan's speech.

In this case, Swan alleges, at most, damage to her reputation. Even if the Court assumes that Deputy Shields included false information in the police report, *Paul* does not provide relief because damage to reputation is insufficient to state a claim.

Swan contests the lack of discovery. Even if she had raised this issue in the District Court, she is not entitled to discovery until she states a plausible claim. *Johnson* 15 F.4th, at 365 (citations omitted).

**<u>Issue 5</u>: Swan failed to overcome either prong of Shield's qualified immunity defense.**

Swan's argues that the District Court erred by using its finding, that there was not a violation of Swan's constitutional rights, to hold that she did not overcome Shield's qualified immunity. Swan's argument fails because determining whether a violation of law occurred is the first prong of qualified immunity analysis. See *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed. 2d 565 (2009) (citation omitted).

Even if Swan had stated a cognizable violation of her constitutional rights, she still failed to establish the second prong because she cannot meet her burden to establish that Deputy Shields violated her clearly established constitutional right. See *Id*. Swan asks this Court to characterize her complaint as "freedom from materially adverse use of police authority substantially motived by protected reports and political expression." APPELLANT'S BRIEF at pg. 20. A more appropriately narrow characterization would be "does a police officer, who believes the person reporting alleged crimes against her neighbor is basing those allegations on delusions created by a mental health issue, violate a constitutional right by noting his beliefs in the police report?" No Supreme Court case or robust consensus of

Circuit Court cases establishes that as a violation of a Constitutional right. Swan relies on the holding in *Keenan v. Tejeda,* 290 F.3d 252, 257-62 (5th Cir.2002) as clearly established law violated by Shields. APPELLANT'S BRIEF at pg. 20. The fact scenarios are not similar. Keenan involved used the pointing of firearms at the Plaintiff and issuance of citation; neither are alleged in this case.

Swan failed to meet her burden to point to a case clearly establishing that Shield's violated her constitutional rights.

**Issue 6: Swan failed to plead a claim against Montgomery County under *Monell*, failure to train, or ratification.**

Swan's claims against Deputy Shields in his official capacity are a suit against Montgomery County. *Rhyne v. Henderson County,* 973 F.2d 386, 392 n. 2 (5th Cir.1992) (citing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

Swan alleges that Montgomery County (and Montgomery County Constable Precinct 3) are liable under: *Monell*, failure to train and supervise, and ratification theories.

***Swan's pleadings are dispositive of her Monell claim:***

Swan attempts to hold the County liable under *Monell*. ROA.582 - 583. The required elements to impose municipal liability upon a government entity under section 1983 are (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dept.*

*of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "In order for a municipality to have liability to a plaintiff, the municipality must itself cause the constitutional violation at issue." *Monell*, 436 U.S. at 690-91. To establish liability, a plaintiff must either identify "a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.*

Swan contacted Captain Atkins with Montgomery County Precinct 3 Constable's Office, and he told her that "The office" does not have a mechanism to remove entries from police reports, even if those entries are false. ROA.578 *at* ¶¶ *22-23*. Swan concludes that Captain Atkin's statements establish a policy or custom. ROA.583 *at. 11* ¶ *42*.

Swan's reliance on statements by a Constable Precinct 3 Captain is dispositive of the first two *Monell* elements because neither he nor the Constable are a county policy maker. *Rhode v. Denson*, 776 F.2d 107, 108-110 (5th Cir.1985) ("We are unpersuaded that a constable of a Texas county precinct occupies a relationship to the County such that his edicts may fairly be said to represent official county policy" and holding that "Denson, as a constable, lacked the power to make county policy.") The issue of whether the Constable "is a policymaker for purposes of 42 U.S.C. §

1983 liability is foreclosed by *Rhode v. Denson…*". *Pena v. Jimenez*, 31 Fed.Appx. 833, 202 WL 180460, *1 (5th Cir.2002) (Not selected for publication).

Swan's failure to allege a constitutional violation means she is unable satisfy the third *Monell* element, and is therefore dispositive of her *Monell* claim.

Because Swan does not allege the existence of any of the *Monell* elements, her claims against Shields in his official capacity, which are actually claims against Montgomery County, should be dismissed.

***Failure to train or supervise:***

Swan alleges that the County failed to train officers on the limits of Texas Health and Safety Code Chapter 573. ROA.582 *at 10 ¶ 41*. Texas Mental Health Code Chapter 573 requires a person be "a substantial risk of serious harm to the person or others unless the person is immediately restrained" to qualify for an emergency detention order. TEX. HEALTH & SAFETY CODE § 573.001(a)(1)(B).

In order to establish Montgomery County's liability for failure to train, Plaintiff has to show (1) inadequate training procedures, (2) that the training or lack thereof caused evidence to be fabricated against Plaintiff, and (3) deliberate indifference on behalf of Montgomery County. *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir.2002). Plaintiff must plead facts sufficient to suggest additional training would have avoided the injury. *Id*, at 333. Deliberate indifference requires "at least a pattern of similar incidents." See *Estate of Davis ex rel McCully v. City*

*of North Richmond Hills*, 406 F.3d 375, 383, 386 (5th Cir. 2005). Plaintiff has failed to allege any similar incidents.

In addition, for a municipality to be liable for failure to train an officer, "the highly predictable consequence of not training" must be obvious. *Id*. Plaintiff has not pled any material facts showing that it should have been obvious to the policymaker that the risk of inaccurate report entries was a "highly predictable consequence" of the failure to train. In the absence of such evidence, there are insufficient facts to plausibly suggest a failure to train or retrain, and Montgomery County should not be liable. Deliberate indifference requires a showing of more than negligence or even gross negligence. *Id* at 381.

In this case, the Parties agree that the officers did not believe Swan met the criteria to be involuntarily detained under the statute, and she was not detained. Swan's reliance on the statute is misplaced. Swan has not alleged sufficient facts plausibly suggesting failure to train.

***Ratification:***

Swan concludes that Captain Atkin's statements ratified Deputy Shields' conduct. ROA.583 *at ¶ 42*. Swan's alleged facts do not support a theory of ratification, which courts have limited to extreme fact patterns. See *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).

> "*Grandstaff,* however, does *not* stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later

> found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy. Rather, *Grandstaff* affirmed a judgment against a Texas city on a highly peculiar set of facts: in response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," at 171, which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability," *Id.* at 166. The *Grandstaff* panel emphasized the extraordinary facts of the case, and its analysis can be applied only to equally extreme factual situations.

*Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir.1986).

Swan's allegations do not even come close to demonstrating such an extreme factual situation. Even if the policymaker defended the Deputy's conduct, that does not necessarily impose liability to the County. *Coon*, at 1161-62.

**<u>Issue 7</u>: Dismissal with prejudice of Swan's Third Amended Complaint was not an abuse of discretion where Swan had already been given multiple attempts to replead, continually used AI to drive up litigation costs, and repleading would have been futile.**

Swan argues that she should have been allowed to amend. APPELLANT'S BRIEF at pg. 23. Swan was already on her Third Amended Complaint. ROA.573.

"Although Rule 15 evinces a bias in favor of granting leave to amend, it is not automatic." *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir.1996) (quotation marks and citation omitted). "Under Rule

15, the courts consider such equitable factors as '(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment." *Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir.2009) (internal quotations deleted).

In this case, every factor supports the District Court's decision to deny Swan another attempt to state a valid claim. Swan's use of AI generated pleadings to rapidly respond to Appellees' motions and replead essentially the same operative facts did nothing but cause delay. Her continual use of AI to replead in response to motions to dismiss on the same facts would result in an infinite loop subjecting defendants to astronomical costs responding to a non-stop onslaught of AI generated pleadings. See also ROA.405 – 406 (discussing the AI hallucination contained in Swan's pleading). Swan's pleadings were not done in good faith, as evidence by her removing incriminating allegations from her Second Amended Complaint. In the First Amended Complaint, Swan alleged that she was placing letters in mailboxes. ROA.151 *at ¶ 3.7*. Deputy Shields pointed out that putting letters in mailboxes is a crime. ROA.175. In her Second Amended Complaint, Swan alleged she "distributed" the letters. ROA.193 *at ¶ 13*. Removal of unfavorable facts in an attempt to avoid dismissal is evidence of Swan's bad faith and dilatory intent. See *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir.1993) (affirming district

court's denial of leave to amend in an attempt to avoid summary judgment).

Swans' filing of an extraordinary number of mostly meaningless filings exposes her dilatory motive to use an excessive amount of AI pleadings to drive up litigation costs. See ROA.73, ROA.85, ROA.117, ROA.122, ROA.127, ROA.246, ROA.256, ROA.270, ROA.305, ROA.330, ROA.337, ROA.358, ROA.363, ROA.367, ROA.393, ROA.401, ROA.415, ROA.421, ROA.433, ROA.470, ROA.477, ROA.481, ROA.486, ROA.505, ROA.510, ROA.539, ROA.544, ROA.552, ROA.597, ROA.602, ROA.610, ROA.668, ROA.675, ROA.680, ROA.689, ROA.695, ROA.740, ROA.753, ROA.756, ROA.758, ROA.770, ROA.794, ROA.815, ROA.832, ROA.838, ROA.847, ROA.860, ROA.867, ROA.875, ROA.881, ROA.889, ROA.902, ROA.905, ROA.927, ROA.931, ROA.936, ROA.939, ROA.943, ROA.1041, ROA.1051, ROA.1077, ROA.1091, ROA.1112. Appellants do not concede that Swan's remaining filings had merit; but the filings listed above demonstrate an intent to use AI to file voluminous meritless documents for the sole purpose of driving up litigation costs.

In addition to the volume of pleadings, the speed of Swan's pleadings indicate that she was generating documents without any real consideration of their content. Swan filed her First Amended Complaint on July 29, 2025. ROA.138. Appellants moved to dismiss the First Amended Complaint on August 8, 2025. ROA.160. Swan filed her Second Amended Complaint the same day. ROA.190. Swan's use of AI to

replead moments after Appellees incurred drafting fees shows her intent to use AI to drive up costs.

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872-73 (5th Cir.2000) (citation omitted). Whether a proposed pleading amendment is futile is essentially the same inquiry the Court must conduct in deciding whether the complaint states a claim for which relief may be granted. *Id.* (citations omitted).

Even in her Third Amended Complaint Swan was still unable to state a valid claim. Allowing Swan to subject Appellees to her infinite loop of AI pleadings to drive up litigation costs prejudices Appellees both financially and in delay. Finally, Swan's underlying factual allegations simply do not rise to the level of constitutional violations no matter how many more conclusory allegations she adds.

**Issue 8: Swan's failure to serve the Constable's Office is fatal to her attempt to obtain a default judgment against it.**

Swan's motion for default fails for two reasons. First, she has never served the Constable's Office. She has never even obtained citation for the Constable's Office. The only party she obtained citation for and served was Deputy Shields. ROA.37. Furthermore, she never served Montgomery County. Appellee Counsel, recognizing that Montgomery County is the proper party for "Shields in his official capacity" appeared for Montgomery County and Shields in his individual capacity. *See e.g.,* ROA.40. Montgomery County filed a motion to dismiss. ROA.719

*(explaining official capacity suits)*.

Even if the Constable's Office had been served, it would not be a proper party because it lacks *jural* capacity. A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313-14 (5th Cir. 1991). A governmental department such as the Montgomery County Constable's Office thus cannot engage in litigation "unless the true political entity has taken explicit steps to grant the servient agency *jural* authority." *Id.* at 313. The "true political entity" in this case is Montgomery County.

The Trial Judge correctly determined that default against the Constable's Office was inappropriate because it had not been served. ROA.1132 – 1133. See also FED. R. CIV. PRO. 4(m).

**<u>Issue 9</u>: Shields is immune from Swan's state law tort claims because the Texas Tort Claims Act does not waive immunity for the claims.**

Swan brought state law tort claims of defamation, defamation *per se*, and common-law fraud against Deputy Shields in his individual capacity. ROA.583 - 585. All of Swan's state law tort claims fail as a matter of law because Deputy Shields made the contested statements in the course and scope of his official duties.

***Election of remedies requires dismissal of the claims against Deputy Shields:***

The election of remedies doctrine requires dismissal of individual officials if they can show that (1) their conduct was within the scope of their duties with the

County, and (2) the suit could have been brought against the County. TEX. CIV. PRAC. & REM. CODE § 101.106, *Anderson v. Bessman,* 365 S.W.3d 119, 124 (Tex.App.—Houston[1st Dist.], 2011, no pet.) (citing *Franka v. Velasquez,* 332 S.W.3d 367, 369 (Tex. 2011)).

As to the first prong, whether the defendant was acting within the scope of his duties, the Complaint clearly alleges he was. The entire suit is based on the Shields' completion of a police report. See *e.g.,* ROA.547 *at* ¶ *15.* Swan argues that she "plausibly alleged a separate post-encounter course after the welfare function had concluded…" APPELLANT'S BRIEF at pg. 28. Swan's brief does not point to any particular private activity, but Appellee's best guess is that Swan is referring to the timing of the entry in the report occurring after the other deputy left the scene. ROA.577 *at* ¶ *20*. The timing of the entry does not change the core fact that Swan is complaining about an officer making an entry into a police report.

Swan's attempt to distinguish her case from *Frias v. Hernandez* is without merit. APPELLANT'S BRIEF at pg. 28. Relying on the opinion of the Texas Supreme Court and various Texas Appellate Courts, the Fifth Circuit found that troubling allegations of private motivations and wrongful conduct did not change that officer's job responsibilities. *Frias v. Hernandez,* 142 F.4th 803, 809-810 (5th Cir.2025). These types of allegations form the basis of Swan's Complaint. Entering information into a police report, as alleged by Swan, falls squarely within Shield's

duties as an officer regardless of whether the officer has some personal intent. Swan's request to replead in an attempt to state a valid state law cause of action fails for the same reason her argument in "Issue 7" fails. *Supra*.

As to the second prong, because the suit is brought for actions Deputy Shields took in the course and scope of his duties, the case could have been brought against Montgomery County. *Alexander v. Walker,* 435 S.W.3d 789, 792 (Tex. 2014) see also, *Frias,* 142 F.4th, at 807-9 (citing *Franka,* 332 S.W.3d at 381). The County's immunity from such a claim does not mean that the Plaintiff could not sue the County. *Franka,* 332 S.W.3d at 385 and *Alexander,* 435 S.W.3d at 792. This is true "even though, at times, it may result in individual citizens suffering pecuniary loss as a result of oppressive or malicious actions by government officials." *Martinez v. Hardy*, 864 S.W.2d 767, 773 (Tex.App.—Houston[14th], 1993, no writ) (internal citations omitted).

Swan argues that her state law claims against Montgomery County should not have been dismissed with prejudice. APPELLANT'S BRIEF at pg. 29. Swan's argument fails because she did not bring state law claims against Montgomery County; she specifically asserted that such claims were not cognizable. ROA.586 at ¶ 53. Even if she had, the claims would fail because Montgomery County is not liable for state law torts of this nature. TEX. CIV. PRAC. & REM. CODE § 101.057

(The Tort Claims Act does not apply – thus immunity is not waived – for intentional torts).

## CONCLUSION

Appellees requests this Court Affirm the District Court's granting of their motion to dismiss for failure to state a claim, award them costs, the amount of which to be determined by the District Court, and for all other relief in equity or law to which Appellees may be entitled.

Respectfully submitted,

__s/ Daniel Plake____________________

Daniel Plake
SBN: 24062942
FED ID No.:918023
501 N. Thompson, Ste. 300
Conroe, Texas 77301
Tel: (936) 539-7828
Fax: (936) 760-6920
Daniel.plake@mctx.org
**ATTORNEY FOR APPELLEES**

## CERTIFICATE OF SERVICE

I, Daniel Plake, certify that today, September 9, 2026 a copy of the brief of Appellees, was served upon the following *via* the Court's EM/ECF system and/or certified mail:

Deborah Swan
1318 Chesterpoint Drive
Spring, Texas 77386
swansinvestigations@gmail.com

s/ Daniel Plake

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of the Federal Rule of Appellate Procedure 32(a)(7) and 5TH Circuit Rule 32.3 because the brief contains 6,991 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point, Times New Roman font.

s/ Daniel Plake